UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20914-CR-ALTONAGA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAMION ST. PATRICK BASTON,

    Defendant.

_____/

### DEFENDANT BASTON'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S "REQUESTS FOR RESTITUTION PURSUANT TO 18 U.S.C. § 1593"

The defendant, Damion St. Patrick Baston, through counsel, respectfully submits this response in opposition to the government's requests for restitution.

**1.  Neither T.J.M. nor L.S. qualifies as a "victim" for purposes of restitution under 18 U.S.C. § 1593(c), because the Superseding Indictment did not charge Baston with recruiting these two trial witnesses to engage in commercial sex trafficking.**

The government's December 8, 2014 Notice of Requests for Restitution Pursuant to 18 U.S.C. § 1593, ("Req.") seeks restitution from Baston on behalf of five persons: K.L., T.C.M, J.R., T.J.M., and L.S.  See Req. 1.  The first three persons, K.L., T.C.M. and J.R. were identified in Counts 1, 2 and 3 of the Superseding Indictment as the persons Baston recruited to engage in commercial sex trafficking.  DE36:1-3; Req. 2.  However, as the government acknowledges, T.J.M. and L.S. "are not referenced in the Superseding Indictment."  Req. 7.  As the government further acknowledges, T.J.M. and L.S. were merely witnesses, whose testimony about having "prostituted for the defendant" was "admitted [at trial] under Federal Rules of Evidence 404(b) and 413."  Req.

2 and fn. 1 (citing DE52, DE63, DE72)). But the government cannot validly obtain restitution for these two witnesses, because these two witnesses, do not qualify as "victims" under the sex trafficking restitution statute.[1]

Relying on 18 U.S.C. § 1593(b)(3), the restitution statute which authorizes a district court to order a defendant "to pay the victim . . . the full amount of the victim's losses," the government claims that it can recover restitution for the prostitution earnings of witnesses T.J.M. and L.S. The government asserts: "the definition of 'victim' set forth in Section 1593(c) includes within its scope any 'individual harmed as a result of a crime under this chapter.'" Req. 7 (emphasis added). This statute, however, does not define a "victim" as "any" individual harmed as a result of a crime under this chapter. Instead, it defines "victim" as "the individual harmed as a result of a crime under this chapter." 18 U.S.C. § 1593(c) (emphasis added). The government substitutes the word "any" in place of the word "the."[2] The two statutes have different definitions. Different definitions, of course, entail different meanings. See, e.g., United States v. Santos, 553 U.S. 507, 525 (2008)

---

[1] In candor, undersigned counsel has not found a case interpreting the meaning of the term "victim" in § 1593. The issue appears to be one of the first impression.

[2] The statute defines "victim" as follows:

> **(c)** As used int his section, the term "victim" means the individual harmed as a result of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or a representative of the victim's estate, or another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named such representative or guardian.

18 U.S.C. § 1593(c).

(Stevens, J., concurring) (the "two different definitions" of "proceeds" in the forfeiture statute).[3]

Plainly, the words "any" and "the" have different meanings. "Any individual" might encompass a person not named in an indictment as a victim of a crime. See Dep't of Housing and Urban Dev. v. Rucker, 535 U.S. 125, 131 (2002) ("the word 'any' has an expansive meaning.") (citation omitted). But "the individual" refers to the specific individual named in an indictment as the victim of a crime. See United States v. Rybicki, 354 F.3d 124, 137-38 (2d Cir. 2003) (en banc) (noting that the statute at issue referred to "the intangible right of honest services," and holding that Congress' use of "[t]he definite article 'the' suggests that [the term "intangible right to honest services"] had a specific meaning to Congress when it enacted the statute") (cited approvingly in Skilling v. United States, 561 U.S. 358, 404 (2010)); Flandreau Santee Sioux Tribe v. United States, 197 F.3d 949, 952 (8th Cir. 1999) (relying on a statute's "use of the definite article 'the' instead of the indefinite article 'a,' and holding that "[t]he statute's use of 'the person' refers to someone specific – whoever made the excessive claim."). Thus, the limitation to "the individual" harmed as a result of the offense limits the victims to the persons specifically identified as victims of offenses charged in the indictment.

In a lengthy footnote, the government attempts to rely on the definition of "victim" in a separate restitution statute, 18 U.S.C. § 3663A(a)(2), which governs restitution in several categories of cases other than sex trafficking. Req. 7-8, fn. 2. This argument is unavailing. If Congress had intended for the definition of "victim" in § 3663A(a)(2) to govern in sex trafficking prosecutions, there would have been no point in defining a "victim" for purposes of these specific offenses in §

---

[3] Justice Stevens concurring opinion is treated as the controlling opinion in Santos. United States v. Esquenazi, 752 F.3d 912, 935 (11th Cir. 2014).

1593(c). See, e.g., United States v. W.R. Grace, 504 F.3d 745, 756 (9th Cir. 2007) ("Congress may validly create multiple enforcement mechanisms that each draw on different definitions for the same term or phrase.").

Moreover, Congress specifically provided that restitution applied in sex trafficking cases "[n]otwithstanding section 3663 or 3663A." 18 U.S.C. § 1593(a). The use of a "notwithstanding clause" indicates Congress' intent to override provisions of other laws. See Miccosukee Tribe of Indians of Florida v. U.S. Army Corps of Engineers, 619 F.3d 1289, 1297 (11th Cir. 2010) (citing Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993)).

Finally, the historical context makes clear that Congress did not intend a broad definition of "victim" in § 1593(c). When it adopted the original restitution statute in 1982, Congress authorized restitution for "the loss sustained by any victim as a result of the offense." Hughey v. United States, 495 U.S. 411, 416 (1990). In Hughey, the Supreme Court held that this restitution statute "authorize[d] an award of restitution only for the loss caused by the specific conduct that [was] the basis of the offense of conviction." United States v. Dickerson, 370 F.3d 1330, 1337 (11th Cir. 2004) (explaining Hughey's holding). In 1990, in response to Hughey, Congress amended the restitution statute to define the term "victim" more expansively, and thus partially overruled Hughey's interpretation. Dickerson, 370 F.3d at 1338. The amended statute permitted restitution for "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern of criminal activity." Dickerson, 370 F.3d at 1335-36 and n. 11 (citing and discussing 18 U.S.C. § 3663A(a)(2)).

Ten years later, in October 2000, Congress enacted the Trafficking Victims Protection Act (TVPA), including its restitution provision, 18 U.S.C. § 1593(c) – the statute at issue here. United

States v. Marcus, 560 U.S. 258, 260 (2010); United States v. Fu Sheng Kuo, 620 F.3d 1158, 1164 (9th Cir. 2010). This TVPA restitution provision, far from utilizing the more expansive definition of "victim" in amended § 3663A(a)(2), used the more restrictive language quoted above. Plainly, by October 2000, if Congress intended the broad victim definition advocated by the government here, Req. 7-8 & n. 2, it knew how to do so. Instead, it enacted a definition which, if anything, is more restrictive than the original general restitution definition, since it provides restitution only for "the individual harmed as a result of a crime," not for "any victim of such offense." Compare 18 U.S.C. § 1593(c), with Hughey, 495 U.S. at 416.[4]

### 2. Restitution should not be ordered for the $400,000 earned by K.L. in Australia, because Congress lacks constitutional authority to apply United States criminal law to prostitution in Australia.

In support of its request for restitution, the government submitted five exhibits. Req. Exs. 1-5. These exhibits listed the alleged earnings of five prostitutes in Australia, and in the United States. Because the government cannot merely rely on summary charts to establish loss amounts, Baston reserves his possible objections to the loss calculations until the restitution hearing, when the government will have an opportunity to present witnesses and evidence. However, because the government's request for $400,000 in restitution for prostitution earnings by K.L. in Australia is flawed as a matter of law, Baston now addresses the legal deficiencies with regard to this $400,000

---

[4] The government argues that Baston was engaged in a "scheme" under 18 U.S.C. § 3663A(a)(2). For the reasons argued above, this Court need not reach this argument since § 3663A(a)(2) does not even apply here. It bears noting that the indictment did not charge Baston with participating in a "scheme." The indictment did not charge him with participating in a "venture" under § 1591(a)(2). Moreover, the term "scheme" in § 3663A(a)(2) should be read in pari materia with the terms "conspiracy" and "pattern of criminal activity" in this statute, and with the usage of this term in other statutes, such as 18 U.S.C. § 1343. So read, it is doubtful whether the term "scheme" applies to Baston's conduct as a lone pimp. But, again, this Court need not reach this question.

part of the restitution request. See United States v. Edwards, 728 F.3d 1286, 1294-97 (11th Cir. 2013) (district court's restitution order affirmed in part and vacated in part); cf. United States v. Yousef, 327 F.3d 56, 85-112 (2d Cir. 2003) (addressing count by count the exercise of United States extraterritorial jurisdiction).

Count 1 of the Superseding Indictment charged that Baston "did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, that is, K.L., knowing, and in reckless disregard of the fact, that means of force, threats of force, fraud and coercion would be used to cause such person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1), 1591(b)(1), and 1596(a)(2)." DE36:2.

Baston's August-December 2011 acts of recruiting K.L., by coercion, to engage in prostitution in Australia, in violation 18 U.S.C. § 1591(a)(1), for which the government seeks restitution under 18 U.S.C. § 1593, all occurred in Australia. This Court relied on Fed. R. Evid. 404(b) when it admitted evidence relating to K.L. in Australia. DE145:13. The government had sought admission of evidence relating to K.L. in Australia in 2011 pursuant to Fed. R. Evid. 404(b), or, alternatively, as evidence "inextricably intertwined" with the charged offenses. DE67:4. Either way, the proffered evidence was not part of the charged offense. See United States v. Troya, 733 F.3d 1125, 1133 (11th Cir. 2013) (Rule 404(b) evidence relates to "uncharged" offenses); United States v. US Infrastructure, Inc., 576 F,.3d 1195, 1210 (11th Cir. 2009) ("inextricably intertwined" evidence is admissible "to establish a background for the later substantive acts charged in the indictment"). But, as noted in Section 1 above, the sex trafficking restitution statute limits restitution to losses of "the individual harmed as a result of a crime under this chapter." 18 U.S.C. § 1593(c)

6

(emphasis added). Thus, the government can only obtain restitution for the $400,000 earned by K.L. in Australia in 2011 if it can establish that this $400,000 is part the offense of conviction. See United States v. Dickerson, 370 F.3d at 1337 (noting that a narrowly-worded restitution statute "authorize[s] an award of restitution only for the loss caused by the specific conduct that [was] the basis of the offense of conviction.") (quoting Hughey, 495 U.S. at 413). Because of constitutional limits on Congressional power, the government cannot establish that this $400,000 can validly be considered part of the offense of conviction.

K.L. met Baston for the first time in the summer of 2011, in Australia, at a nightclub on Australia's Gold Coast. DE147:167. The government claims that, thereafter, K.L. earned $400,000, in Australia, as a prostitute for Baston, during a 20-week period, from August 1, 2011, to December 16, 2011. Req. Ex. 1, pp. 1-3. K.L.'s prostitution earnings in the United States began afterward, from February 22, 2012 to May 15, 2012. Req. Ex. 1 pp. 4-5. The earnings occurred after K.L. left Australia for Dubia, and then left Dubai on February 21, 2012, and arrived in Miami on February 22, 2012, after a layover in Paris, France. DE148:23, 25; Gov. Exs. 53, 54. K.L. had not been in the United States prior to this February 21, 2012 trip. DE147:162; PSI ¶¶ 7-8. K.L.'s prostitution activity in Australia in 2011 had no nexus to the United States.

Although the government's restitution pleading does not mention the basis for seeking restitution under United States criminal law for prostitution earnings earned in Australia, the basis for such a request must be 18 U.S.C. § 1596, the statute that gives extraterritorial application to sex trafficking prosecutions. See Superseding Indictment, Count 1 (citing 18 U.S.C. § 1596); DE145:10 (prosecutor cites § 1596's "extraterritorial jurisdiction"). This statute provides, in pertinent part:

**Additional jurisdiction in certain trafficking offenses.**

> **(a) In general**. – In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if –
>
> (1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. § 1101); or
>
> (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

18 U.S.C. § 1596.

Baston was convicted of being an alien who illegally re-entered the United States. DE130. Thus, the jurisdictional basis for the prosecution in this case is not subsection (a)(1) of the statute, which refers to U.S. citizens or aliens lawfully admitted, and must be subsection (a)(2) of the statute, as Baston was present in the United States when he was arrested. DE150:157. But, putting jurisdictional questions aside for the moment, the more fundamental question is whether Congress has the constitutional authority to order restitution for sex trafficking in violation of 18 U.S.C. § 1591(a)(1) – in Australia. In United States v. Bellaizac-Hurtado, 700 F.3d 1245, 1257-58 (11th Cir. 2012) (2-1), Judge Pryor, writing for the two-judge majority, vacated convictions of extraterritorial drug trafficking on the ground that, "as applied to these defendants," Congress "exceeded its [constitutional] power" in proscribing extraterritorial conduct. In so ruling, Judge Pryor rejected the view, expressed by Judge Barkett in her concurrence, that the case should be decided on the basis of "universal jurisdiction." Id. at 1257-58 (finding that the Court of Appeals "need not decide" this issue). Judge Pryor's majority opinion hardly ever uses the words "jurisdiction" or "jurisdictional." Id. at 1247-58. Thus, before reaching jurisdictional questions, the preliminary question is one of constitutional authority.

In Bellaizac-Hurtado, the government claimed that Congress' authority to criminalize extra-territorial drug trafficking was based on the "Offenses Clause" of the Constitution, U.S. Const. Art. I, § 8, cl. 10.  700 F.3d at 1248.  If the government were to rely on the "Offenses Clause" in this case, this reliance would be unavailing, since Count 1 of the Superseding Indictment charged Baston with coerced prostitution under § 1591(a)(1), and prostitution – even coerced prostitution – plainly is not an "international crime."  See id. at 1257-58 ("Murder and rape, and indeed, most malum in se offenses, are . . . universally condemned, [yet] all fall outside of international law."); see also id. at 1261 (Barkett, J., concurring) ("only the so-called jus cogens crimes of piracy, slavery and slave-related practices, war crimes, crimes against humanity, genocide, apartheid, and torture have thus far been identified as supporting universal jurisdiction.").  Indeed, without an interstate nexus, domestic sex trafficking likely would not be a federal crime.  See Jennifer Nguyen, Note, The Three PS of the Trafficking Victims Protection Act: Unaccompanied Undocumented Minors, and the Forgotten P in the William Wilberforce Trafficking Prevention Reauthorization Act,  17 Wash & Lee J. Civil Rts. & Soc. Just. 187, 214 (2010) (noting Congressional concerns, when it adopted the TVPA, that "the Commerce Clause does not grant Congress the power to regulate ordinary sex crimes, such as prostitution, because it does not substantially affect interstate commerce").

Although undersigned counsel has not found a case on-point discussing the constitutional underpinnings of § 1591, the bases may be a mix of its power to regulate interstate and foreign commerce under the Commerce Clause of Article I, and its power to abolish slavery under the Thirteenth Amendment.  See United States v. Ballinger, 395 F.3d 1218, 1229 n. 6 (11th Cir. 2005) (noting the Commerce Clause basis for Congress' prohibition on interstate transportation of women for the purpose of prostitution) (citing Hoke v. United States, 227 U.S. 308 (1913)); Nguyen, The

9

Three PS, 17 Wash & Lee J. Civil Rts. & Soc. Just., at 214 & accompanying footnotes (discussing scholars' views that Congress' prohibition on sex trafficking is grounded in part on the Thirteenth Amendment).

Undersigned counsel has not found a case discussing the extraterritorial reach of the Thirteenth Amendment. Arguments can be made for extraterritorial application of the Thirteenth Amendment. See, e.g., Tobias Barrington Wolff, The Thirteenth Amendment and Slavery in the Global Economy, 102 Colum. L. Rev. 973, 1046 (2002). But the "slavery" prohibited by the Thirteenth amendment does not equate with "forced prostitution." See Nora V. Demleitner, Forced Prostitution: Naming an International Offense, 18 Fordham Int'l L. J. 163, 195 (1994) ("forced prostitution contains certain discrete elements that distinguish it from slavery").

To be sure, the prosecutor in closing argument at one point referred to Baston's prostitutes as "little more than sex slaves." DE154:121. But the jury instructions, like § 1591, make no reference to slavery. There is therefore no jury finding regarding slavery. Slavery is not part of the K.L. offense of conviction. The facts of this case contain too much evidence of consensual activity to make it possible to affix the "slavery" label on relationships between Baston and the prostitutes. The government's own expert on the "Stockholm Syndrome," Dr. Frank Ochberg, characterized the relationship as a "bond [that] creates an alliance." DE149:154 ([W]hat I saw was a partnership."); DE149:164 ("The commonality [among Baston's prostitutes] is about a reluctance to escape because of a certain amount of bond."). At least one person whom the defendant allegedly attempted to recruit as a prostitute "left" him and did not prostitute herself for him. DE149:65.

The Commerce Clause[5] also does not authorize restitution of K.L.'s Australian prostitution earnings. With regard to commerce, this Court instructed the jury that one element of a violation of § 1591 is that "the defendant's acts [of coercing a commercial sex act] were in or affected interstate or foreign commerce." DE90:4; DE154:194. Since K.L. earned the $400,000 in 2011 in Australia, it is the Foreign Commerce Clause, not the Interstate Commerce Clause, that would need to support constitutional authority here.

The only fact involving foreign commerce mentioned by the prosecution in closing argument to the jury was that the defendant "brought Katie [K.L.] from Dubai to Miami." DE154:140. Baston's act of bringing K.L. into the United States for purposes of prostitution may supply the Foreign Commerce nexus for K.L.'s restitution for losses in the United States, for moneys earned <u>after</u> her entry into the United States. But this airline trip, via Paris, occurred in February 2012, after the completion of the commercial sex activity in Australia between August and December 2011, for which the government seeks $400,000 in restitution. Req. Ex. 1, pp. 1-3. This airline trip, therefore, does not provide a basis for extending Congress' extraterritorial constitutional powers to this restitution.

The government might now argue, for restitution purposes, that Baston's wire transfers of prostitution proceeds out of Australia to a United States bank account might supply a foreign commerce nexus. DE151:49; Gov. Ex. 83; DE148:86-87. But, at most, wire transfers might qualify as part of a sex trafficking offense under § 1591(a)(2), which criminalizes benefitting financially from a sex trafficking venture. Baston was not charged with this separate § (a)(2) offense. As an

---

[5] Art. I, § 8, Cl. 3 of the Constitution provides: "The Congress shall have power ... [t]o regulate Commerce with Foreign Nations, and among the Several States, and with the Indian Tribes."

alleged lone pimp, he could not be charged with benefitting from a "venture": the statute defines a venture as an entity of at least two persons. Baston was charged with violating subsection (a)(1) of § 1591, which makes no reference to financial benefits.

Furthermore, in the Superseding Indictment, the wire transfer transactions supported the money laundering counts, DE36:8-9, not the sex trafficking violation charged in Count 1. DE36:9-10. This confirms that this sex trafficking offense was <u>complete</u> before Baston wired any funds: money laundering must involve the proceeds of a "'completed offense' after which the money laundering can occur." <u>United States v. Silvestri</u>, 409 F.3d 1311, 1334 (11th Cir. 2005) (citations omitted). Here, the completed offense was the sex trafficking charged in Count 1. <u>See</u> DE36:9 (money laundering counts identify violations of § 1591(a)(1) and (b)(1) as the predicate "specified unlawful activity").

The government might argue that Baston's international airline trip to Australia in 2010 was for the purpose of engaging in commercial sex trafficking, and claim that this travel alone supplies a foreign commerce nexus. But, first, a single trip on an international airline does not suffice to validate Congress' exercise of power under the Foreign Commerce Clause. <u>Cf</u>. <u>United States v. Lopez</u>, 514 U.S. 549, 558-60 (1995) (to be valid under Commerce Clause, activity must "substantially affect" interstate commerce); <u>id</u>. (noting that the Supreme Court has not declared "that Congress may use a relatively trivial impact on commerce as an excuse for broad general regulation"). Indeed, it is debatable whether a single trip on an international would suffice to validate Congress' power under the Foreign Commerce Clause even for a statute that incorporates such foreign travel as an element of the offense. <u>Compare</u> <u>United States v. Bredimus</u>, 353 F.3d 200 (5th Cir. 2003) (statute that prohibited travel in foreign commerce for the purpose of committing an

12

unlawful sex act was a valid exercise of Congress' power, when applied to United States citizen who traveled from the United States to Thailand to film children performing sex acts), with United States v. Clark, 435 F.3d 1100, 1117-1121 (9th Cir. 2006) (2-1) (Ferguson, J., dissenting) (concluding that 18 U.S.C. § 2423(c) falls outside Congress' Foreign Commerce powers, in part because "the mere act of boarding an international flight" cannot supply the requisite Foreign Commerce nexus).

Here, traveling to a foreign country is not an element of the § 1591 offense. The statute's jurisdictional element refers to conduct "in or affecting interstate or foreign commerce." 15 U.S.C. § 1591(a)(1). This indicates that, in contrast to statutes like 18 U.S.C. §§ 2423(b) & (c), for which Congress made foreign travel the jurisdictional element of the offense, Congress did not contemplate that mere travel on an international airline would support its exercise of the Foreign Commerce power.

Moreover, Baston's trip to Australia on an international airline, a year before meeting K.L., does not qualify as conduct "in or affecting interstate or foreign commerce" for purposes of 18 U.S.C. § 1591(a)(1). The evidence does not establish whether Baston traveled to Australia from the United States, or from another country. In addition, no evidence was presented that Baston intended to engage in sex trafficking when he traveled to Australia in 2010, and the jury made no finding in this regard. And, since Baston did not meet K.L. until the summer of 2011, he clearly did not travel to Australia in 2010 with the intent to force K.L. – specifically – to engage in prostitution.

Finally, Baston is neither a United States citizen, nor an alien admitted for permanent residence in the United States. While [i]t has long been established that Congress has the power to regulate the extraterritorial acts of U.S. citizens, United States v. Belfast, 611 F.3d 783, 810 (11th Cir. 2010), this rationale significantly dissipates with regard to individuals, like Baston, who are not

U.S. citizens. See United States v. Verdugo-Urquidez, 494 U.S. 259, 275 (1990) (Kennedy, J., concurring) ("The distinction between citizens and aliens follows from the undoubted proposition that the Constitution does not create, nor do general principles of law create, any juridical relation between our country and some undefined, limitless class of noncitizens who are beyond our territory.").

    **3.**    **Due Process prohibits the exercise of extraterritorial jurisdiction to effect restitution for the $400,000 earned by K.L. in Australia.**

The Due Process Clause of the Fifth Amendment limits the extraterritorial application of the criminal laws of the United States. See United States v. De La Garza, 516 F.3d 1266, 1272 n. 4 (11th Cir. 2008) ("to exercise personal jurisdiction over a defendant there must be . . . 'a constitutionally sufficient relationship between the defendant and the forum'") (quoting Omni Capital Intern. Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 103-04 (1987)); United States v. Yousef, 327 F.3d 56, 111 (2d Cir. 2003) ("in order to apply extraterritorially a federal criminal statute to a defendant consistent with due process, there must be a sufficient nexus between the defendant and the United States, so that application would not be arbitrary or fundamentally unfair.") (quoting United States v. Davis, 905 F.2d 245, 248-49 (9th Cir. 1990) (brackets omitted)).[6]

"The nexus requirement serves the same purpose as the "minimum contacts" test in personal jurisdiction. It ensures that a United States court will assert jurisdiction over a defendant who 'should reasonably anticipate being haled into court' in this country.'" United States v. Klimavicius-

---

[6] The Due Process limitation on extraterritorial application of criminal laws has less force with regard to drug trafficking by a stateless vessel on the High Seas, because all nations condemn drug trafficking by stateless vessels on the High Seas. United States v. Campbell, 743 F.3d 802, 812 (11th Cir. 2014). The restitution in this case, however, does not implicate drug trafficking on the High Seas. Moreover, Congress' power to define and punish offenses on the High Seas arises from a separate constitutional provision. See U.S. Const. Art. I, § 8, Cl. 10.

Viloria, 144 F.3d 1249, 1257 (9th Cir. 1998) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)); see also Cara Chomski, Campbell's Soup: Due Process Concerns in Applying the Federal Anti-Bribery Statute to Noncitizen Government Contractors Overseas, 2012 U. Chi. Legal F. 429, 457-61 (2012) (noting circuit split on how to determine whether extraterritorial application of a criminal law satisfies Due Process, and advocating application of the World-Wide Volkswagen "minimum contacts" inquiry).

The "minimum contacts" test has three elements: "First, the defendant must have contacts related to or giving rise to the plaintiff's cause of action. Second, the defendant must, through those contacts, have purposefully have availed itself of forum benefits. Third, the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there." Fraser v. Smith, 594 F.3d 842, 850 (11th Cir. 2010). Thus, a prerequisite to all three prongs of the "minimum contacts" test is that these contacts relate to, or give rise to, the cause of action.

Here, because Baston was not a U.S. citizen, nor a lawfully admitted alien, the sole basis for extraterritorial jurisdiction over Baston under § 1596 was that he was "present in the United States." See 18 U.S.C. § 1596(a)(2). But with regard to the $400,000 in restitution sought for prostitution in Australia, for acts committed in August-December 2011, the fact of being "present in the United States" when arrested on December 17, 2013, PSI ¶ 18, two years after the conduct for which restitution is sought, is not a Due Process jurisdictional nexus.

To begin with, Baston could have been unlawfully abducted from Australia to the United States without affecting his eligibility to be subject to criminal charges, and restitution, in the United States, because the U.S.-Australia extradition treaty does not provide that extradition is exclusive means by which the United States could obtain his presence in the country. See United States v.

15

Odoni, __F.3d __, 2015 WL 150740 at * 3 (11th Cir. Jan. 13, 2015). The fact that a defendant may be present in the United States against his will is not the kind of fact that, standing alone, can support a finding of jurisdiction – at least not consistent with Due Process.

As noted above, the critical inquiry is whether the defendant's contacts with the United States are "gave rise" to the legal proceedings in the United States. Cf. Fraser, 594 F.3d at 850 (setting forth the "minimum contacts" test); see, Yousef, 327 F.3d at 112 (no Due Process bar on defendants' extraterritorial acts "[g]iven the substantial intended effect of their attack in the United States"); United States v. Campbell, 798 F. Supp. 2d 293, 307-08 (D.D.C. 2011) (finding no due process violation where defendant's bribery in Afghanistan directly affected the United States' interests and defrauded American taxpayers).

Here, Baston's presence in the United States did not "give rise" to the government's claim for restitution for $400,000 in prostitution earnings. Baston was present in the United States in 2013, two years after K.L. earned this $400,000 in Australia in 2011. By 2013, the coerced prostitution in Australia was a completed crime. Indeed, as noted above, it was because the Count 1 violation of 18 U.S.C. § 1591 was a completed offense that it could serve as a predicate "specified unlawful activity" for purposes of the money laundering counts also charged in the Superseding Indictment. DE36:9; Silvestri, 409 F.3d at 1334. For this same reason, moreover, Baston's wiring of funds from Australia to the United States cannot supply the jurisdictional basis for restitution for sex trafficking, because the sex trafficking was already a "completed offense" when the wire transfers occurred. See Silvestri, 409 F.3d at 1334. Moreover, a single airline trip does not supply a Due Process jurisdictional nexus, and, even if it could, there is insufficient evidence regarding Baston's trip to Australia prior to meeting K.L. in 2011 for this trip to supply a Due Process jurisdictional nexus.

In short, there is no sufficient jurisdictional nexus, for Due Process purposes, to support restitution for the $400,000 K.L. earned in Australia in 2011.

## CONCLUSION

For the foregoing requests, Baston requests that this Court not order restitution for witnesses T.J.M. and L.S., and not order restitution for the $400,000 K.L. may have earned in Australia in 2011.

                    Respectfully submitted,

                    MICHAEL CARUSO
                    FEDERAL PUBLIC DEFENDER

BY:    *s/Timothy Cone*
                    Timothy Cone
                    Assistant Federal Public Defender
                    Florida Bar No. 0980986
                    109 North 2nd Street
                    Fort Pierce, Florida 34950
                    Tel: (772) 489-2123
                    Fax: (772) 489-3997
                    Tim_Cone@fd.org
                    Temp: 202-208-7528 ext. 121

BY:    *s/Arun Ravindran*
                    Arun Ravindran
                    Assistant Federal Public Defender
                    Florida Bar No. A4402032
                    150 W. Flagler Street, Suite 1700
                    Miami, FL 33130-1556
                    Telephone: (305) 533-4181
                    Fax: (305) 536-4559
                    E-mail: arun_ravindran@fd.org

**CERTIFICATE OF SERVICE**

  I HEREBY certify that on   February 9, 2015  , I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                 *s/Timothy Cone*

                 *s/Arun Ravindran*

**SERVICE LIST**

**UNITED STATES v. DAMION ST. PATRICK BASTON**
Case No. 13-20914-CR-ALTONAGA
United States District Court, Southern District of Florida

**Timothy Cone**
Tim_Cone@fd.org
Assistant Federal Public Defender
109 North 2nd Street
Fort Pierce, Florida 34950
Tel: 772-489-2123
Fax: 772-489-3997
Temp: 202-208-7528 ext. 121
Attorney for Defendant
Service via ECF

**Arun Ravindran**
arun_ravindran@fd.org
Assistant Federal Public Defender
150 W. Flagler Street, Suite 1700
Miami, FL 33130-1556
Tel: (305) 533-4181
Fax: (305) 536-4559
Attorney for Defendant
Service via ECF

**Olivia S. Choe**
Olivia.S.Choe@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132
Tel: 305-961-9437
Fax: 305-536-4676
Service via ECF