```
                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
                            MIAMI DIVISION
                       CASE NO. 13-20914-CR


 UNITED STATES OF AMERICA,        Miami, Florida

         Plaintiff,               February 19, 2015

    vs.                           8:38 a.m. to 9:02 a.m.

 DAMION ST. PATRICK BASTON,       Courtroom 12-2

         Defendant.               (Pages 1 to 18)


                       RESTITUTION HEARING
           BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                  UNITED STATES DISTRICT JUDGE

 APPEARANCES:

  FOR THE GOVERNMENT:    OLIVIA S. CHOE, ESQ.
                         Assistant United States Attorney
                         99 Northeast Fourth Street
                         Miami, Florida City, 33132
                         (305) 961-9437
                         olivia.choe@usdoj.gov


  FOR THE DEFENDANT:     TIMOTHY CONE, ESQ. (By Telephone)
                         ARUN RAVINDRAN, ESQ.
                         Assistant Federal Public Defender
                         150 West Flagler Street, Suite 1500
                         Miami, Florida 33130
                         (305) 536-6900
                         tim_cone@fd.org
                         arun_ravindran@fd.org

  REPORTED BY:           STEPHANIE A. McCARN, RPR
                         Official Court Reporter
                         400 North Miami Avenue
                         Twelfth Floor
                         Miami, Florida 33128
                         (305) 523-5518
                         Stephanie_McCarn@flsd.uscourts.gov
```

# I N D E X

| | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| **WITNESSES FOR THE GOVERNMENT:** | | | | |
| | -- | -- | -- | -- |
| **WITNESSES FOR THE DEFENDANT:** | | | | |
| | -- | -- | -- | -- |

| EXHIBITS MARKED & ADMITTED IN EVIDENCE | MARKED | ADMITTED |
|---|---|---|
| Government's Exhibit No. | -- | -- |
| Defendant's Exhibit No. | -- | -- |

## MISCELLANEOUS

| | Page |
|---|---|
| Proceedings.................................... | 3 |
| Court Reporter's Certificate..................... | 18 |

```
 1        (The following proceedings were held at 8:38 a.m.)
 2             COURT SECURITY OFFICER:  All rise.
 3             THE COURT:  Good morning.  Please be seated.
 4             Please state your appearances for the record.
 5             MS. CHOE:  Good morning, Your Honor.  Olivia Choe on
 6   behalf of the United States.  And with me is Special Agent
 7   Frank Vinci from Homeland Security Investigations.
 8             MR. VINCI:  Good morning.
 9             THE COURT:  Good morning.
10             MR. RAVINDRAN:  Good morning, Your Honor.  Arun
11   Ravindran, Assistant Federal Defender, for Mr. Baston who is
12   present in court.  And also joining us telephonically is Tim
13   Cone, another Assistant Federal Defender.
14             MR. CONE:  Good morning, Your Honor.
15             THE COURT:  Good morning, Mr. Cone.
16             PROBATION OFFICER:  Good morning, Your Honor.  Demesha
17   Edwards on behalf of U.S. Probation.
18             THE COURT:  Good morning.
19             I will hear from the government.
20             MS. CHOE:  Thank you, Your Honor.
21             The government, as you can see from our original
22   submission, is seeking restitution on behalf of five victims
23   who are listed on Page 1, in the amounts that are outlined both
24   there and in the exhibits which, as the Court has seen,
25   extensively detail the trial transcripts and trial exhibits
```

1  upon which the requests rely.
2          The two issues before the Court are, first, whether
3  two of these victims -- well, of course, the overall awards of
4  restitution are before the Court. But the two contested issues
5  appear to be whether two of these victims, who are not
6  referenced in the superseding indictment, are at all entitled
7  to restitution under Section 1593. And second, whether
8  restitution based on extraterritorial conduct that was charged
9  in Count 1, based upon Section 1596 of Title 18, is permissible
10 and constitutional.
11         THE COURT: Let me ask a question because -- so I
12 understand the two discreet issues, the ones involving whether
13 TJM and LS are victims at all.
14         MS. CHOE: Correct.
15         THE COURT: And then whether or not I should order as
16 part of restitution to KL the earnings she did not receive from
17 prostituting herself in Australia, right?
18         MS. CHOE: Correct, Your Honor.
19         THE COURT: Prostitution here is illegal; is it not?
20         MS. CHOE: Prostitution, certainly in Florida and
21 almost everywhere in the United States is illegal. And more to
22 the point, sex trafficking, which is in the statutory
23 provisions that are charged, coerced prostitution, prostitution
24 that is the result of means of force, threats of force, fraud
25 and coercion is illegal.

1               THE COURT:  Right.  So how -- how and why would I
2    order restitution to somebody to account for her lost earnings
3    from prostituting herself?
4               MS. CHOE:  Well, I would -- I would respond kind of
5    two-fold.  The first thing I would point the Court to is the
6    statutory provision itself, Section 1593, which mandates
7    restitution for victims of the crime which are defined as, you
8    know, victims of the sex-trafficking conduct of the defendant.
9               THE COURT:  Right.  But how do you define restitution?
10   Restitution is damages, right, to make the person whole?
11              MS. CHOE:  Well, I believe the statutory measure of
12   restitution is laid out in the provisions of Section 1593 which
13   point to, I believe -- and I don't have it in front of me, but
14   both Section 2259, which lists certain compensable losses that
15   count the measure -- constitute the measure of restitution, as
16   well as the additional measure of loss that's specifically set
17   out in Section 1593, which is the lost earnings to which the
18   Court has referred.
19              But there is also a case and I believe it is
20   *Cortes-Castro,* which I do reference in the pleading but not
21   this specific portion of it.  And I believe in that case, and
22   if it was not that case it was another Eleventh Circuit case,
23   the defense did raise this argument that the victims of the
24   crime had been engaged in illegal activity.  And the Court did
25   consider that argument and reject it and find that they were

1    nevertheless victims entitled to restitution under the statute.
2            MR. CONE:  Your Honor, Tim Cone here.  We concede that
3    the way the statute is written in terms -- and I am now looking
4    at 1593(3) and it talks about the victim's services or labor,
5    that does seem to contemplate that even though the services or
6    labor were illegal, prostitution being illegal, that these
7    victims can recover the monies.
8            I do note that Your Honor's skepticism is well placed
9    and I think that's one reason that restitution is narrow in
10   this context and narrower than in other contexts.  And if I may
11   just make two points to clarify our objection.  One, a minor
12   technical one, as to the two victims TJM and LS that are --
13   that were just witnesses, all of their earnings were in
14   Australia.  So, of course, our objection to Australian earnings
15   carries over and -- as to those two as well, that argument
16   applies to them.
17           The second point, though, is one that's implicit in
18   our opposition which is -- but I want to make explicit now and
19   serve this argument which is that as to the Australian
20   earnings, the Court may not need to reach the constitutional
21   argument because the statute -- the restitution statute seems
22   to contemplate that only indicted conduct can be the basis for
23   restitution; only the harm directly falling from the offense.
24   And so if the Australian earnings were viewed, all the
25   Australian earnings by all the prostitutes, as not being the

offense of conviction but rather evidence that came in as being either inextricably intertwined or under 404(b) as prior bad acts evidence, then it would not be part of the offense of conviction and under the statute itself, would not be a part of the restitution award.

And just to support our view that the Australian earnings are not part of the offense of conviction, I want to read a paragraph from the closing argument of the prosecutor to the jury in this case. Docket Entry 154 at Page 138.

And the prosecutor tells the jury, "Counts 1, 2 and 3 charge the defendant with the sex trafficking of three women. Count 1 is for Katelyn Lang, Count Two is Terika Moore and Count 3 is for Jade Roberts. Now, you may be asking yourselves, well, wait a second, we heard from seven different women, six testifying victims and Giedre Piekyte whose voice we heard on the 0-0-0 call from Australia. So why don't we have seven trafficking counts? And the answer is -- and I am, now, turning to Page 140 of the transcript. The answer is, the prosecutor says, "Actually, quite simple, only three of these women were actually prostituted here in the Southern District of Florida. And so as a legal matter, that means we can only charge those three as sex trafficking counts here in Miami Federal Court."

So we agree with what the prosecutor was saying there, that this -- that the Australian earnings are not chargeable

1  and are not part of the offense of conviction.
2          Now, I can go on to make additional points on the
3  constitutional argument, but I just wanted to lay out the
4  statutory argument.
5          THE COURT: Thank you, Mr. Cone.
6          Ms. Choe?
7          MS. CHOE: I would -- thank you, Your Honor. I would
8  respond first that the conduct in Australia with respect to KL
9  is clearly a part of the offense charged and the offense of
10 conviction. And for that, the Court may look both to the
11 superseding indictment and the jury instructions that were
12 given to the court.
13         The discussion and closing argument which is, of
14 course, not the charge at issue, but instead merely argument
15 was actually the reference to venue. The victims who are not
16 charged were never trafficked in Miami, and so while under, I
17 believe, 18 U.S.C. §3238, they could conceivably be charged in
18 the district where the defendant was first brought or arrested
19 for extraterritorial conduct, the conduct relating to them
20 could not be charged in Miami unless, like KL, they had been
21 brought here and their victimization was part of a continuing
22 offense that had venue here under 3237. So I believe Mr.
23 Altman was referring to --
24         THE COURT: Mr. Cone? Oh, I'm sorry, you are talking
25 about Mr. Altman in the closing statement.

1          MS. CHOE:  Yes, in closing.

2          -- referring simply to venue and not to conduct that
3    was the subject of Count 1.  And returning to the previous
4    question raised by the Court concerning the fact that the
5    victims engaged in illegal conduct.  The argument was raised in
6    the *Cortes-Castro* case before the District Court.  I have the
7    transcript here.  I believe the defense attorney raised, kind
8    of, precisely that argument which the Court did consider and
9    reject.

10         Now, it was not discussed specifically in the Eleventh
11   Circuit's opinion.  But the Eleventh Circuit in that case and
12   in other cases, I think *Robinson* is one, has assumed awards of
13   restitution to victims like the victims in this case who
14   engaged in prostitution as a result of the use of force and
15   coercion.

16         THE COURT:  What if we had a situation, a scenario
17   where young victims are coerced and forced to go to Holland and
18   sell marijuana on the streets, and they sell for a long period
19   of time and aren't compensated, and the defendant is convicted
20   here because the young victims also come to the United States
21   and sell cannabis for the -- the leader and aren't paid their
22   wages.  Would we be, as part of restitution, requiring that
23   those young victims be paid their wages for selling cannabis on
24   the streets of Holland because it is legal in Holland but not
25   legal here?

1            MS. CHOE:  I can see the Court's point that that would
2    be unusual.  I could see Congress, were those individuals
3    forced to do it through, as in this case, means of violence and
4    coercion, ordering restitution for them.
5            I see the Court's point that the restitution here goes
6    beyond, perhaps, harm that they suffered strictly as a result
7    of the beating and medical cost, but in this case, Congress
8    went further and ordered restitution for lost earnings from,
9    for the most part, illegal activity.  But I do think that it is
10   different that the earnings in this case were the result of not
11   just recruitment and enticement but violence and coercion.  And
12   in the end, Congress has required restitution by that measure.
13           MR. CONE:  If I may respond?  Your Honor, your
14   question is right on target, particularly from a constitutional
15   perspective.  The focus is on the connection between the
16   foreign commerce power of Congress on the one hand and the
17   activity that Congress is regulating on the other.  And here, I
18   mean, I could deal with your Holland hypothetical but staying
19   close to home here for our statute, 1591 is focusing on, you
20   know, harboring, transporting, recruiting persons to engage in
21   coerced prostitution.  That's the activity that Congress is
22   regulating.
23           And the question is, is there any connection between
24   that activity going on in Australia in our case or in your
25   example, going on in Holland and the foreign -- and foreign

```
 1   commerce?  And the answer in both cases is -- is no.  Those
 2   were strictly local activities in Holland in your hypothetical
 3   and in our case strictly local activities in Australia.  There
 4   is no foreign commerce that Congress could be regulating here.
 5            THE COURT:  Ms. Choe, I find the defense's both
 6   statutory and constitutional arguments very compelling.
 7            MS. CHOE:  As to the foreign commerce clause?
 8            THE COURT:  As to the breadth of your request for
 9   restitution and their objections and their response.  I am
10   persuaded by the defendant's reasoning, by the statutory
11   construction, that -- that they engage in.  I'm not -- I find
12   the government is overreaching and seeking amounts in
13   restitution that aren't supported by statute, and as Mr. Cone
14   was alluding to and as is addressed in the briefing, by our
15   ability under the constitution to -- to reach these amounts.
16            MS. CHOE:  May I, just for clarity, ask whether the
17   Court is ruling only with respect to that 400,000 as far as KL
18   but not for the amounts sought?
19            THE COURT:  The amount sought for TJM and LS, they
20   are, I agree with the defense that they are not victims under
21   1593(c).
22            MS. CHOE:  I understand.
23            THE COURT:  I agree with the defense's reading of the
24   statute on Subsection (c) as victim is defined, the individual
25   harm as a result of a crime, not any individual.
```

```
 1            MS. CHOE:  And as far as the second argument
 2   concerning KL, the Court's ruling concerning the 400,000 in
 3   Australia but not the additional amount that relates to the
 4   conduct in Miami?
 5            THE COURT:  Correct.
 6            MS. CHOE:  Okay.  And then for TCM and JR --
 7            THE COURT:  Mr. Cone, any issues that you would want
 8   to address with that?
 9            MR. CONE:  Well, I was going to let my colleague,
10   Mr. --
11            THE COURT:  Mr. Ravindran.
12            MR. CONE:  -- Ravindran, address those, we discussed
13   those a little bit, a possible objection, but I wanted him to
14   make the call.
15            THE COURT:  All right.
16            Mr. Ravindran?
17            MR. RAVINDRAN:  Your Honor, our only objection with
18   respect to those victims in light of the Court's ruling is
19   really one of sufficiency of the evidence.  In our review of
20   the record in this case, it looks like the jugular issue and
21   the issue that the victims really testified about was -- had to
22   do with coercion.  Because the critical issue in this case was
23   coercion, there wasn't really much cross-examination from
24   the -- from the trial counsel to establish the actual
25   restitution amounts.
```

```
 1          So because that testimony really wasn't, and frankly
 2   didn't need to be put through the crucible of
 3   cross-examination, we dont know that the record evidence is
 4   developed enough to support those findings.
 5          THE COURT:  To support the amounts that the government
 6   is seeking?
 7          MR. RAVINDRAN:  Yes, Your Honor.
 8          THE COURT:  All right.
 9          Ms. Choe.
10          MS. CHOE:  Your Honor, we would disagree and note that
11   as cited in the government's exhibits to our restitution
12   request, the victims, all of them and specifically the victims
13   TCM and JR, did testify about how much they had to work and how
14   much they earned either per day or per date or per week at
15   different times.  And in addition, the government's request
16   does exclude attempts to be conservative by excluding periods
17   when the victims themselves said they didn't work, for example,
18   when TJM said she did not work during the travel to Jamaica and
19   by including an estimate for living expenses which, again, the
20   government attempted to make quite a generous estimate in order
21   to make the overall calculation conservative.
22          The Eleventh Circuit has, in both *Cortes-Castro* and
23   *Robinson,* affirmed the use of this kind of measure to determine
24   the amount of losses under the calculation set forward in 16 --
25   Section 1593.  And, in general, the Eleventh Circuit and other
```

1  courts have noted that the loss amounts for restitution need
2  not be established with, you know, dollar and cents
3  specificity, but can be reasonable estimates based on trial
4  testimony or even affidavits or declarations, agreed factual
5  proffers.
6         I would note, for example, *United States v. Futrell,*
7  where the Court noted difficulties in achieving the exact
8  measurements will not preclude the trial court from awarding
9  restitution.
10         THE COURT:  Mr. Ravindran, anything additional on
11  these points?
12         MR. RAVINDRAN:  Your Honor, I would just note one
13  thing.  In Government's Exhibit 2, to its paper-seeking
14  restitution, there is a reference to Docket Entry 142, Line 31
15  or Page 31 and Page 57.  And it says, "KL testified that during
16  the spring of 2012, both she and TCM were working for the
17  defendant, she typically worked seven days a week.  And that
18  TCM testified that she worked every day against Sunday --
19  everyday except Sunday."
20         I would just submit, Your Honor, that it seems on some
21  level that some of the testimony -- some of the evidence as to
22  TCM and the other victim at issue at this point was based on
23  hearsay testimony, number one.  Number two, the Court, of
24  course, has an alternative remedy if it finds that the record
25  is insufficient, which is to recall the two witnesses where the

```
 1   restitution amounts are still at issue and reopen a hearing on
 2   that matter.
 3           MS. CHOE:  Your Honor, may I respond?
 4           THE COURT:  You may.
 5           MS. CHOE:  Well, above this citation to which the
 6   Court was referred is, of course, the citation to TCM's own
 7   testimony concerning the fact that she worked every day except
 8   Sunday, which is why the government's calculation uses six days
 9   per week.  And KL's testimony was not hearsay, it was simply
10   testimony regarding what she did and what she recalled.  It was
11   not concerning an out-of-court statement.
12           The defendant raised in his opposition, a specific
13   objection to any of the proof submitted by the government to
14   the Court.
15           THE COURT:  I'm satisfied with the -- with the quality
16   and the level of proof supporting the amounts for TCM and JR.
17           MS. CHOE:  Your Honor, may I -- just returning --
18           THE COURT:  Yes.
19           MS. CHOE:  -- and really for my appeal section, for
20   clarity's purposes concerning only KL.  I understand the
21   Court's ruling as far as TJM and LS.  Is the Court -- I know
22   the Court said that the reach of the request was beyond the
23   scope of the constitution.  Is the Court's ruling limited --
24   I'm assuming, but I want to be clear -- to the restitution
25   award not to the exterritorial reach of 1596 to reach this
```

1    conduct, or is the Court commenting on that?
2            THE COURT:  I am only commenting on the ability to
3    order $400,000 in restitution for KL's prostitution activities
4    in Australia.
5            MS. CHOE:  Okay.  And the basis is the constitution,
6    the foreign commerce clause and?  Okay.
7            THE COURT:  All of the arguments presented in the
8    defense's memorandum.
9            MR. CONE:  And Your Honor, Tim Cone here, and feel
10   free to include the statutory argument that I made earlier in
11   this hearing.
12           THE COURT:  Oh, I do.  I had indicated in my remarks
13   earlier that I was persuaded by your arguments which relied on
14   both statutory construction as well as the reach of the
15   constitution.  Yes.
16           MS. CHOE:  Thank you, Your Honor.
17           THE COURT:  All right.  And so do we have an amount so
18   Probation knows?
19           MS. CHOE:  I believe, so for KL, the remainder would
20   be 78,000.
21           THE COURT:  Correct.  11,200 for TCM and 10,070 for
22   JR?
23           MS. CHOE:  Correct.
24           THE COURT:  All right.  Are there any other issues?
25           MR. CONE:  No, Your Honor.

```
 1              MS. CHOE:  No, Your Honor.
 2              THE COURT:  Mr. Ravindran?
 3              MR. RAVINDRAN:  Your Honor, if I may beg the Court's
 4    indulgence --
 5              THE COURT:  Sure.
 6              MR. RAVINDRAN:  -- for one moment.  My client has
 7    advised that he has been designated to a facility most recently
 8    in Victorville, California, but a different facility.  And I
 9    explained to him that after the Court issued its judgment and
10    sentencing occurred, it was a BOP issue and a somewhat
11    Byzantine process.  But we just thought that we would raise it
12    with the Court at this point, given that the defendant's
13    mother, who, as you may remember, came from New York to Miami
14    to testify is in New York state.  And so for family reasons,
15    obviously, he has an interest being placed in a facility in the
16    New York area or alternatively in South Florida.  I just wanted
17    to raise that.
18              THE COURT:  Did the judgment indicate a
19    recommendation?
20              MR. RAVINDRAN:  It did not, Your Honor.
21              THE COURT:  So do you want me to include in the
22    amended judgment a recommendation for the state of New York?
23              MR. RAVINDRAN:  If you would, Your Honor.
24              THE COURT:  All right.
25              MS. CHOE:  Your Honor, again, simply because I have
```

1  gotten in trouble before, may I preserve an objection to the
2  Court's ruling?
3          THE COURT:  Certainly.
4          MS. CHOE:  Thank you.
5          THE COURT:  You all have a good day.
6          MS. CHOE:  Thank you, Judge.
7          MR. RAVINDRAN:  Thank you.
8          MR. CONE:  Thank you, Your Honor.
9      (The proceedings concluded at 9:02 a.m.)
10
11
                    C E R T I F I C A T E
12
13     I hereby certify that the foregoing is an
14  accurate transcription of the proceedings in the
15  above-entitled matter.
16
17
   _02/25/15__            *[signature: Stephanie A. McCarn]*
18     DATE               STEPHANIE A. McCARN, RPR
                          Official United States Court Reporter
19                        400 North Miami Avenue, Twelfth Floor
                          Miami, Florida 33128
20                        (305) 523-5518
21
22
23
24
25